IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 15-mj-01012

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ANDREW JOHN GIBSON,

    Defendant.

---

**ORDER OF DETENTION PENDING APPEARANCE IN NEVADA**

---

    This matter was before the Court for an identification and detention hearing on February 10, 2015. Assistant United States Attorney Martha Paluch represented the government, and Warren Williamson represented the Defendant. The Defendant waived identity, but contested detention in this District.

    The Court has concluded, by a preponderance of the evidence, that no condition or combination of conditions of release will reasonably assure the appearance of the Defendant in Nevada, and by clear and convincing evidence, that no condition or combination of conditions of release will reasonably assure the safety of others or the community, based on the attached findings.

    IT IS HEREBY ORDERED that Mr. Gibson is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; and

    IT IS FURTHER ORDERED that upon order of this Court or on request of an attorney for the United States of America, the person in charge of the corrections facility shall deliver Mr. Gibson to the United States Marshal for the purpose of an appearance in connection with proceedings in Nevada *with all deliberate speed*, where the District Court can make its own determination of whether pretrial confinement is required.

DATED and EXECUTED this 10th day of February, 2015, in Denver, Colorado.

By the Court:

 S/Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge

United States v. Andrew John Gibson
Case No. 15-mj-01012

### FINDINGS OF FACT, CONCLUSIONS OF LAW, and
### REASONS FOR ORDER OF DETENTION

In order to sustain a motion for detention, the government must establish that (a) there is no condition or combination of conditions which could be imposed in connection with pretrial release that would reasonably insure the defendant's presence for court proceedings; or (b) there is no condition or combination of conditions which could be imposed in connection with pretrial release that would reasonably insure the safety of any other person or the community.

If there is probable cause to believe that the defendant committed an offense which carries a maximum term of imprisonment of over 10 years and is an offense prescribed by the Controlled Substances Act, or if the defendant is charged with a crime of violence, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community.

The Bail Reform Act, 18 U.S.C. § 3142(g), directs the court to consider the following factors in determining whether there are conditions of release that will reasonably assure the appearance of the defendant as required and the safety of any other person and the community:

(1)   [t]he nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2)   the weight of the evidence against the person;

(3)   the history and characteristics of the person, including –

   (A)   the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

   (B)   whether at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

(4)   the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

The Court has taken judicial notice of the Court's file, the arguments of counsel and evidence presented at the hearing int his matter (including the Bail Report), The Independence House Mental

1

Health Assessment, and comments provided at the hearing. Weighing the statutory factors set forth in the Bail Reform Act, I find the following:

The Defendant was indicted in the District of Nevada on charges relating to the possession of child pornography, which carries a presumption of detention. He was arrested in Colorado. A United States Magistrate Judge in this District released the Defendant on $50000.00 unsecured bond with conditions and ordered him to appear in Nevada. He complied with those conditions and did appear in Nevada. A United States Magistrate Judge in Nevada continued the Defendant's release status with a personal recognizance bond and certain conditions including home detention and GPS monitoring, as well as no (or extremely limited) internet access. From October 2014 until February 2, 2015, it is undisputed the Defendant complied with conditions of release. On February 2, 2015, in a telephone call with U.S. Probation Officers Morales (from Colorado) and Bustos (from Nevada), concerning a potential job at Autozone and whether that would be acceptable (including whether and to what extent the Defendant could have access to the internet), the Defendant stated (1) he had a previous plan to commit suicide and should have carried it out; (2) he will no longer abide by his conditions of release because they are unconstitutional; and (3) if anyone came to arrest him he would be "locked and loaded" and ready to defend himself. He was arrested on February 6, 2015 without incident and brought before this Court.

The District of Nevada has alleged a violation of release conditions based on the foregoing statements. Although the government does not point to any particular condition of supervised release that was violated, the government relied essentially on the penumbra of the order setting conditions of release, because of Defendant's statement that he was not longer going to comply with the conditions. The government also relies on risk of flight (*i.e.*, if Defendant follows through with his expressed desire to commit suicide, he will not be available for future court appearances) and supplies a District of Utah unpublished case directly on point. Finally, the government relies on a risk to others or the community, given the Defendant's statements about his willingness to use violence to prevent his arrest. The government contends that I do not have jurisdiction to consider probable cause for the arrest based on violation of conditions of release, only whether the Defendant should be detained pending his appearance in Nevada. The Defendant contends that only if I find a violation of his conditions may I even consider detention.

Federal Rule of Criminal Procedure 32.1(a)(6) gives a Magistrate Judge the authority to release or detain a person charged with supervised release violations under 18 U.S.C. § 3143(a). The statute establishes a presumption in favor of detention that is rebuttable only upon the Defendant showing, by clear and convincing evidence, that he or she is not likely to flee or pose a danger to any other person or the community. Fed. R. Crim. P. 32.1(a)(6). Even if these laws do not apply directly to the current situation, I believe federal criminal law permits a judicial officer to reconsider a pretrial Defendant's release status in the event of changed circumstances that directly impact the important analyses of risk of nonappearance or risk to the community.

Relevant to my decision on whether there are conditions of release that will reasonably assure the appearance of the Defendant in Nevada as required, and the safety of any other person and the community, federal law *requires* that I consider, among other things, the history and

2

characteristics of the person, including his character, physical and mental condition, community ties, and past conduct. 18 U.S.C. § 3142(g)(3)(A). It was disclosed during the hearing that Defendant had undergone a Mental Health Assessment (MHA) as ordered by the District of origin, Nevada, as a condition of his release, and that a written report had been generated. I inquired whether it was appropriate for me to consider this document in my analysis. I gave the parties the opportunity to review the MHA prior to my receiving it, and to put on the record any objections. Although the government expressed reservations on the record about the necessity of looking at the MHA (contending that the evidence was already overwhelming supporting detention), no further objections were made after the parties reviewed the MHA. Because I am to consider mental health in my detention decision, and because this document is a recent (November 2014) report concerning this Defendant's mental health, I believe it necessary and appropriate to consider its contents.

First, and perhaps most relevant, the Defendant stated on February 2, 2015 that he would no longer abide by his conditions of release, as they violate his constitutional rights. This is troubling for several obvious reasons. First, any judge who believes that a defendant will not comply with conditions of release has clear legal grounds to detain. Defendant addressed this thinking at the hearing, arguing (correctly) that except for whatever can be taken away from Defendant's statements during the February 2 telephone conference, Defendant has in fact complied with all conditions of release (including for several days after February 2), and actions speak louder than words. On the other hand, it was clear from the evidence received at the hearing that the Defendant was palpably upset at the prospect of the government interfering with his ability to work at Autozone. As noted in the MHA, Defendant has expressed the thought that the current charges in Nevada are preventing him from having a job; he was concerned that no one would hire him with his charges. When he finally was given an opportunity to work, and the government (through the respective probation officers) were talking about restrictions concerning internet usage, Defendant understandably felt the rug being pulled out from him and reacted. As I noted at the hearing, although evidence of prior compliant conduct is relevant, I must be cognizant that the recent circumstances may have resulted in a breaking point for Defendant. Certainly, the MHA reflects (as of November 2014) Defendant's lack of hope, his having stated that he does not have a future because of the pending charges.

Second, despite the "perverse" nature of the analysis (as I expressed at the hearing), it is in fact true that if Defendant carries out his ideation to commit suicide, he will not be available for trial. *See United States v. George-Rodriguez*, No. 2:13-CR-378 TS, 2013 WL 3246114 (D. Utah June 26, 2013). Into whatever box that suicidal ideation fits, it is a real concern here. In addition to the statements made during the February 2, 2015 telephone call, Defendant had had a prior incident with suicidal ideation sufficient for a mandatory 72-hour psychiatric hold in Nevada in 2013 (as noted in the MHA). The MHA reveals that Defendant has determined three different ways he could commit suicide, two of which involve safety to others or the community (an accident and committing a crime so bad that "when he went to jail, he would be killed"). MHA at pages 5-6. Incidentally, he has been thinking about suicide since age 15 which, of course, cuts both ways in this case (having lived 11 years without a verified attempt at suicide, but also having in the past three months confronted the most serious stressor of his life). In his favor, Defendant reported during the MHA that he did not intend to commit suicide. MHA at page 4.

Third, concerning the risk to others or the community, in addition to the statements made during the February 2 telephone conference, and the means by which Defendant has contemplated suicide, the MHA notes that he had an occasion to punch a hole in a wall during an aggressive urge to impulse. In his favor, the MHA notes that Defendant "did not appear to be at immediate risk of harm to himself and/or others." MHA at page 4.

I will make one more observation. I had the opportunity to be in Mr. Gibson's presence during the several hours of the hearing on this date. I am no trained mental health professional, but I saw a person with virtually no affect. For what little it is worth, his appearance did not alleviate the concerns I am expressing.

In the final analysis, the offense with which Defendant is charged carries with it a presumption of detention. Two prior judicial officers determined that the Defendant had overcome the presumption. The new set of circumstances presented to me, which were not available to those two colleagues, leads me to a different conclusion. I find by a preponderance of evidence that Mr. Gibson is a risk of nonappearance and, by clear and convincing evidence, a risk to the community or others, and that, given his current state of mind in believing that the government (which includes the federal judicial system) is violating his constitutional rights and he no longer has to abide by his conditions of release such that no conditions I fashion can reasonably assure his future appearance or the safety of others. As noted by the government, it is simply too serious and consequential to not take the Defendant at his word. Therefore, he should be detained pending his appearance before the issuing court in Nevada, where his detention can be revisited.

SO ORDERED.